20,000/09-6056.D / kjs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DELORES MORRIS, as Special Administrator of the Estate of TOMMY MORRIS, Deceased, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 07 C 3409 |
| CITY OF CHICAGO, *et al.*, | ) ) | |
| Defendants. | ) | Judge Marovich |

## PLAINTIFF'S MOTIONS *IN LIMINE* 1-5

NOW COMES the Plaintiff, DELORES MORRIS, as Special Administrator of the Estate of TOMMY MORRIS, Deceased, and respectfully requests this Honorable Court to determine, *in limine*, prior to trial, that the following testimony and evidence be determined to be inadmissible and, further, that the Defendants be barred from referring to or inquiring into the following matters at any time during the course of the trial:

### Motion *in limine* #1 to Exclude
### Post-Occurrence Photographs

"Distances are notoriously difficult to gauge in still photographs, and more so in motion pictures (such as videotapes)." *United States v. Soler*, 275 F.3d 146, 155 (1st Cir. 2002). This comment fits the problems with the photographs taken of the scene of the occurrence by David Dix, Defendants' Exhibit D25.

The photographs at issue were taken a few years after the shooting, taken in the daylight, and contain vehicles purportedly in the same location as were the respective vehicles at the time of the shooting. Photographs were taken from the street showing the deck and some are

1

purportedly taken from the location of witnesses to the shooting both standing in the walk and standing on a wooden deck one lot removed from the street. The purpose of the photographs is obvious – to impeach the witnesses by attempting to establish that due to their locations and the positions of vehicles, they were unable to see what they have testified they saw.

> "'To be admissible, evidence must be relevant and its probative value must not be substantially outweighed by the danger of unfair prejudice or misleading the jury.' 'As a general rule, tangible evidence such as photographs must be properly identified or authenticated before being admitted into evidence at trial.' 'Authentication and identification are specialized aspects of relevancy that are necessary conditions precedent to admissibility.'
>
> To be properly identified and authenticated, there must be competent evidence from which to draw a reasonable inference that the photograph 'accurately depicts the scene it purports to represent.' This inquiry must take into account the particular purpose for which the photograph is being offered, because '[p]hotographic evidence is admissible only if it is relevant to the specific issues at trial.'" (*BNSF Railway Co. v. LaFarge Southwest, Inc.*, 2009 WL 4279862, pp. 1-2 (D. N.M. 2009)).

In the case cited above, photographs of what witnesses purportedly were able to see were excluded for three reasons. A telephoto lens was used and so the photographs did not accurately depict what the witness may have seen. Here, there is no evidence from which to show that the cameras were held at eye height nor is there any evidence regarding relative magnification. Second, the photographs were excluded because they portrayed "a scene that is materially different from a scene that was relevant to one of the issues at trial." (*Id.*) The Court commented that there were more than minor differences in color and lighting and as such went to the admissibility of the photographs rather than simply weight. Finally, because of the distortions, the probative value was outweighed "by the danger of misleading or confusing the jury." (*Id.*)

Photographs taken during the day were properly excluded because they would show more than an individual would be able to see at night, the time when the incident occurred. *Featherly v. Continental Insurance Co.*, 243 N.W.2d 806, 814 (Wis. 1976). "[D]istortions due to perspective destroy any probative value" of photographs. *United States v. Akers*, 702 F.2d 1145, 1149 (D.C. Cir. 1983). Courts have also rejected movies or photographs where they found that they "preconditioned the minds of the jurors to accept the plaintiff's theory . . . ." *French v. City of Springfield*, 357 N.E.2d 438, 444 (Ill. 1996); *Spyrka v. County of Cook*, 851 N.E.2d 800, 810 (Ill. App. 2006).

Several variables enter into the picture of what witnesses on the night of the occurrence may have seen, such as the eye height of the witness, the height of the vehicle over which they may be looking, the proximity of the vehicle to the witness, the height of the Deceased, and the proximity of the Deceased to the vehicle or vehicles over which the witnesses looked. To show nothing more than that from one perspective that the Deceased may not have been seen, absent accounting for all of these variables, demonstrate that the photographs at issue are intended to do nothing more than demonstrate the City's theory of the case. And as to photographs taken at night, consideration must be given to the fact that the iris is indeed a remarkable piece of "engineering" and there is no showing that the aperture setting of the camera used at the time allowed in the same level of light as the human iris.

For the foregoing reasons, the post-occurrence photographs of David Dix should be excluded from evidence in this matter.

**Motion *in limine* #2 to Exclude
Stills Obtained from the Frank Hill Video**

Within a minute or two of the shooting, a resident in the second floor of an apartment building on the northeast corner of Lamon and Washington (the Deceased was laying on the parkway of that corner) began video recording the events outside. Various stills from the video were made by the City (see attached photographs) and to the extent that they purport to depict what witnesses may have seen, for the reasons and under the case law set forth in the Plaintiff's Motion *in limine* regarding the Dix photographs, the same applies here. The video was shot from a second floor apartment and Mr. Hill cannot be said to have had the same perspective, view or line of sight of any of the other witnesses to the occurrence. Several of the photographs are blurred. Locations of vehicles are distorted and several of the others are blurred and the subjects cannot be ascertained. Perhaps a few of the photographs are being offered to demonstrate how soon after Hill began his video recording that the weapon allegedly in the possession of the Deceased is first shown in the video. In that regard, the still depicting an elapsed time of "02:31:01" may be admissible and relevant for that purpose. Stills showing a time lapse of "01:14:10" and "01:14:12" show what appears to be an athletic sneaker lighted by a flashlight. Nothing else can be discerned due to the blurriness of the photographs.

For the foregoing reasons, all but the photograph depicting a handgun on the parkway ("02:31:01") should be excluded from evidence.

**Motion *in limine* #3 to Exclude
Diagram Depicting Vehicle Location**

The Plaintiff requests that the attached diagram of the intersection Lamon and Washington showing the various vehicles located on Lamon north of Washington should be excluded for the same reasons noted in the Motion *in limine* #1 of the Plaintiff addressing the Dix photographs – they will tend to mislead the jury by depicting the Defendants' theory of the case.

To the knowledge of counsel for the Plaintiff, no specific measurements exist establishing the size, height or location of the various vehicles which were located on Lamon at the time of the occurrence. The only documentary evidence showing or tending to show the scene at the time are various photographs which, as noted in other motions, tend to distort dimensions and locations of vehicles and cannot be utilized nor relied upon to establish the positioning of the vehicles.

That the purpose of a diagram is to present the City's theory of the case is clear from the diagram itself. The body of the Deceased is shown laying in the parkway on the east side of Lamon north of the north crosswalk. The wooden deck on which several witnesses were standing is shown as well and positioned between the body of the Deceased and the deck are two vehicles, the location of which clearly are to suggest that the witnesses could not have seen what they claimed to have seen. Absent the necessary foundation showing that the vehicles were located on the night in question at the precise locations depicted, the diagram is not relevant and any probative value is outweighed by prejudice to the Plaintiff caused by the jury being misled into believing that the vehicles were located as shown on the diagram.

**Motion *in limine* #4 to Exclude Oak Park Police
In-Car Video**

The chase of the motor vehicle that the Deceased was operating prior to the shooting was recorded by an in-car video taken by Oak Park police who were involved in the pursuit. What is relevant in the shooting of the Deceased are the facts and events known to the police officers at the time of the shooting. *Deering v. Reich*, 183 F.3d 645, 650 (7th Cir. 1999); *Sherrod v. Berry*, 856 F.Supp.2d 802 (7th Cir. 1988). The focus is what the "shooters" knew at the time not what officers involved in the chase may have observed or known that bears on the reasonableness of the use of deadly force. As such, the in-car video taken by the Oak Park police officers should be excluded.

**Motion *in limine* #5 to Exclude
Any Evidence of the Robbery Proceeds and
Video of the Route of Stanley Morris in Fleeing**

Stanley Morris was a passenger in the vehicle that the Deceased was operating, and upon the vehicle coming to a rolling stop, fled the scene on foot first going westbound on the alley north of Washington. A video was taken of the route, a wallet allegedly owned by the victims and some of the proceeds of the robbery. There are also photographs of identification cards and other contents of the wallet on the paved surface of Lamon. The Plaintiff requests that this evidence be excluded.

The path that Stanley Morris took fleeing from the scene is irrelevant.

Evidence of the items owned by the robbery victim that were discovered after the shooting are irrelevant, as it is only those facts known to the "shooters" at the time that bear on the reasonableness of the shooting. *Deering v. Reich*, 183 F.3d 645, 650 (7th Cir. 1999); *Sherrod v. Berry*, 856 F.Supp.2d 802 (7th Cir. 1988) (admission of post-shooting discovery that the deceased was unarmed is reversible error).

Moreover, none of the exceptions contained in Rule 404(b) are probative of any disputed fact in this case. There is no dispute that the Deceased fled from the officers, fled in his vehicle and then fled on foot. And even if relevant, its probative value is slight compared to the prejudice sustained by the Plaintiff.

### **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Court grant the Plaintiff's Motions *in Limine* and that the Defendants be barred from inquiring into, or at any time referring to, the stated matters.

Respectfully submitted by,

/s/ William W. Kurnik
WILLIAM W. KURNIK, Attorney I.D. #01550632
One of the Attorneys for the Plaintiff, DELORES MORRIS, as Special Administrator of the Estate of TOMMY MORRIS, Deceased

| | |
|---|---|
| Basileios J. Foutris | William W. Kurnik |
| Foutris Law Office, Ltd.. | Knight, Hoppe, Kurnik & Knight, Ltd. |
| 53 West Jackson, Suite 252 | 5600 North River Road, Suite 600 |
| Chicago, Illinois 60604 | Rosemont, Illinois 60018-5114 |
| Telephone: 312-212-1200 | Telephone: 847-261-0700 |
| Facsimile: 312-212-1222 | Facsimile: 847-261-0714 |
| E-Mail: bfoutris@foutrislaw.com | E-Mail: bkurnik@khkklaw.com |

**CERTIFICATE OF SERVICE**

   The undersigned, one of the attorneys of record herein, hereby certifies that on May 2, 2011, the foregoing **PLAINTIFF'S MOTIONS *IN LIMINE* 1-5** was electronically filed with the Clerk of the U.S. District Court using the CM/ECF System, along with judge's courtesy copies being delivered; which will send notification of such filing to:

- **Andrea Elizabeth Cook,** andrea.cook@cityofchicago.org
- **Basileios John Foutris,** bfoutris@foutrislaw.com
- **Jonathan Clark Green,** jonathangreen@cityofchicago.org, LW09439@cityofchicago.org
- **Nathalina A Hudson,** nathalina.hudson@usdoj.gov
- **Scott J. Jebson,** sjebson@cityofchicago.org
- **Meghan Kelley Kennedy,** meghan.kennedy@cityofchicago.org
- **William W. Kurnik,** bkurnik@khkklaw.com
- **Nicole Rene Roti,** nroti@cityofchicago.org
- **George John Yamin, Jr.,** gyamin@cityofchicago.org

              /s/ William W. Kurnik
              WILLIAM W. KURNIK, Attorney I.D. #01550632

**ATTORNEYS FOR PLAINTIFF:**

| | |
|---|---|
| Basileios J. Foutris | William W. Kurnik |
| Foutris Law Office, Ltd.. | Knight, Hoppe, Kurnik & Knight, Ltd. |
| 53 West Jackson, Suite 252 | 5600 North River Road, Suite 600 |
| Chicago, Illinois 60604 | Rosemont, Illinois 60018-5114 |
| Telephone: 312-212-1200 | Telephone: 847-261-0700 |
| Facsimile: 312-212-1222 | Facsimile: 847-261-0714 |
| E-Mail: bfoutris@foutrislaw.com | E-Mail: bkurnik@khkklaw.com |