# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DELORES MORRIS, as Special Administrator   )
of the Estate of TOMMY MORRIS,   )
Deceased, *et al.*,   )
   )
            Plaintiffs,   )
v.   )   NO.   07 C 3409
   )
CITY OF CHICAGO, *et al.*,   )
   )
            Defendants.   )   Judge Marovich

## PLAINTIFF'S MOTIONS *IN LIMINE* 12-25

NOW COMES the Plaintiff and respectfully requests this Honorable Court to determine, *in limine*, prior to trial, that the following testimony and evidence be determined to be inadmissible and, further, that the Defendants be barred from referring to or inquiring into the following matters at any time during the course of the trial:

### Motion *in limine* #12 to Bar Evidence that the Shooting was "Justified".

Following the shooting of Tommy Morris, Chicago performed two investigations – one by the Office of Professional Standards and one by Area 5 detectives. Many of the individuals that participated in those investigations are expected to testify in this lawsuit – including the lead detective for OPS, the lead detective for the Area 5 investigation and Deputy Superintendent Roti (the person that oversaw the investigation on the night of the shooting). After the investigations were closed, OPS, Area 5 detectives and Deputy Superintendent Roti concluded that the shooting was "justified". The Defendants should be barred from introducing these opinions at trial.

Testimony that the shooting was "justified" per Chicago policies will undoubtedly lead to substantial jury confusion, and any probative value associated with such evidence is clearly

outweighed by its prejudice (thereby mandating its exclusion under FRE 403). In <u>Thompson v.</u> <u>Chicago</u>, 472 F.3d 444 (7th Cir. 2006), the Seventh Circuit held that the District Court correctly barred the plaintiff from introducing conclusions from Chicago personnel regarding the propriety of a police shooting pursuant to FRE 403. In that case, the Seventh Circuit stated that,

> Accordingly, whatever insight Inspector Lukas and Sgt. Campbell might have had into whether or why Officer Hespe used excessive force would have been of little value except as to possibly causing confusion and bore a substantial risk of prejudice. The jury, after having heard all of the evidence presented, was in as good a position as the experts to judge whether the force used by the officers to subdue Thompson was objectively reasonable given the circumstances in this case. Introducing two experts to testify that Officer Hespe used excessive force would have induced the jurors to substitute their own independent conclusions for that of the experts. In other words, they would have been "induced to decide the case on an improper basis ... rather than on the evidence presented ...," which is precisely why the evidence should have been excluded.

<u>Thompson</u>, 472 F.3d at 458.

As such, just as in Thompson, this Court should bar testimony regarding whether the shooting was "justified" under FRE 403.

In addition, even if the probative value of such opinions are not outweighed by their prejudice, the Defendants should still be barred from referencing the conclusions that the shooting was "justified". The conclusions that the shooting was "justified" are in actuality expert opinions. As such, the conclusions should be barred because: 1) the Defendants never disclosed any witness as a Rule 26(a)(2) expert witness that will testify regarding the propriety of the shooting; and 2) the Defendants never provided any written reports for any witness – or any of the other material demanded by Rule 26(a)(2) – that will be offering expert testimony. On this basis alone, any expert testimony regarding whether the shooting was "justified" must be barred. <u>See</u> <u>F.R.Civ.P. 37(c)(1)</u> ("A party that without substantial justification fails to disclose information required by Rule 26(a)… is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.").

Moreover, even if the Rule 26(a)(2) requirements had been met such that Chicago personnel could testify that the shooting was "justified", such testimony would be inadmissible as improper opinion testimony. Stating that the shooting was "justified" is no different than stating that the shooting did not involve excessive force – which is a legal conclusion that experts are prohibited from offering. See, e.g., Good Shepherd Manor Foundation, Inc. v. City of Momence, 323 F.3d 557, 564 (7th Cir. 2003) (Legal conclusions that determine the outcome of a case are inadmissible); Zeigler Coal Co. v. Director, O.W.C.P., 312 F.3d 332, 336 (7th Cir. 2002)(Opinion witness who supplies nothing but a bottom line supplies nothing of value).

As such, the Defendants should be barred from referencing the various conclusions that the shooting was "justified".

**Motion *in limine* #13 to Bar EMT Coen-Murphey from Offering Opinion Evidence.**

One of the anticipated witnesses in this case is paramedic Coen-Murphey. Ms. Coen-Murphey evaluated Tommy Morris on the scene of the shooting, and, along with two other paramedics, transported Tommy Morris to Mt. Sinai Hospital so that he could receive medical treatment. For the 16 years preceding her deposition, Ms. Coen-Murphey worked as a paramedic for the Chicago Fire Department. Her formal education includes EMT/paramedic training as well as some college.

During her deposition Ms. Coen-Murphey characterized herself as an expert regarding: gunshot wounds; the trajectory of bullets as they enter a gunshot victim's body; an ability to determine the distance that a shooter is from a shooting victim; principles of bullet velocity, transference of energy and kinetic forces; that the gunshot wounds to one of Tommy Morris' arms could not possibly have occurred if he was standing with his arm at his side; that she could determine that one of the bullets that entered Tommy Morris' body hit a bone; and an ability to

determine the mechanism of injury. She also indicated a belief that she is more qualified than the medical examiner to testify regarding the trajectory of gunshot entrance wounds.

Regarding the admissibility of expert testimony, the Seventh Circuit has explained that,

The admissibility of expert testimony is governed by <u>Federal Rule of Evidence 702</u> and *Daubert.* Under this framework, courts determine whether the expert testimony is both relevant and reliable. It is a three-step analysis: the witness must be qualified "as an expert by knowledge, skill, experience, training, or education," the expert's reasoning or methodology underlying the testimony must be scientifically reliable, and the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue.

<u>Ervin v. Johnson & Johnson, Inc.</u>, 492 F.3d 901, 904 (7th Cir. 2007)(internal citations omitted).

Ms. Coen-Murphey should be barred from testifying regarding her self-determined expertise regarding the above-referenced matters. There is no need to belabor the point – Ms. Coen-Murphey's training and experience as an EMT/paramedic clearly does not qualify her as an expert under FRE 702 to opine on the above-referenced topics. On this basis alone, her "expert" testimony must be barred.

In addition, her "expert" testimony must be barred because she was never identified as a Rule 26(a)(2) witness, nor did the Defendants comply with the report requirements outlined in Rule 26(a)(2) with respect to this testimony. <u>See</u> <u>F.R.Civ.P. 37(c)(1)</u> ("A party that without substantial justification fails to disclose information required by Rule 26(a)… is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.").

### Motion in limine #14 to Bar Suggestion that the Area of the Shooting was Dangerous, a High Crime Area, a High Drug Area, or any other Similar Characterization.

The Plaintiff anticipates that the Defendants may seek to characterize the area where the shooting took place as dangerous, high crime, high drug, overrun by gangs, filled with gun-toting residents, or other similar characterization. Any such testimony should be barred.

The Defendants have never produced any evidence that would indicate that the area where the shooting took place is a crime ridden area. Nor did they testify to any facts that would establish a foundation for any such testimony. Plainly, any such testimony is irrelevant and lacking in foundation. Indeed, the Defendants' subjective state of mind at the time of the shooting has no place in this case since the jury is to determine the facts based upon the objective reasonableness standard articulated long ago by the Seventh Circuit. See Sherrod v. Berry, 856 F.2d 802, 804-805 (7th Cir. 1988) ("When a jury measures the objective reasonableness of an officer's action, it must stand in *his* shoes and judge the reasonableness of his actions based upon the information he possessed and the judgment he exercised in responding to that situation."). Any reference to whether the Defendants believed the area was crime ridden is nothing more than an attempt to interject the Defendants' subjective state of mind into the case – and, per Sherrod, should be excluded.

In addition, such testimony would violate the Seventh Circuit's admonition that, in shooting cases, "…evidence outside the time frame of the shooting is irrelevant and prejudicial." Palmquist v. Selvik, 111 F.3d 1332, 1339 (7th Cir. 1997). In Palmquist, the Seventh Circuit reiterated this Circuit's rule (as initially articulated in Sherrod) that facts not known to the shooter at the time of the shooting are not admissible in excessive force cases involving a police shooting. Palmquist, 111 F. 3d at 1341. As the Defendants cannot point to any evidence that verify the crime ridden nature of the neighborhood at issue – such as crime statistics – they should be precluded from suggesting that the area's character had any role in the shooting.

Moreover, evidence that the shooting took place in a high crime, drug, or gang neighborhood creates an undue risk of unfairly prejudicing Plaintiff without any corresponding probative benefit in violation of FRE 403. It would improperly paint Tommy Morris as guilty of

being a criminal by virtue of his association with the crime-ridden area (as Tommy Morris lived less than half a block from where the shooting took place). The Defendants should, therefore, be barred from asking witnesses whether this was or was not a high crime, drug or gang area. See United States v. Irvin, 87 F.3d 860, 865-66 (7th Cir. 1996) (observing the considerable danger of unfair prejudice from evidence that suggests guilt by association); United States v. Doe, 149 F.3d 634, 638 (7th Cir. 1998) ("[J]uries should not conclude that a particular defendant is guilty simply because the defendant shares some characteristics with a particular group.").

### Motion *in limine* #15 to Bar Reference to Defendants' Commendations/Awards.

The Plaintiff anticipates that the Defendants may attempt to introduce evidence regarding their awards, commendations, or honors as police officers. Similarly, the Plaintiff anticipates that the Defendants may attempt to introduce evidence that they are either "good" or "great" officers. Such evidence is not relevant to any issue in this case and, therefore, must be barred pursuant to FRE 404. Moreover, any introduction of such evidence would serve as nothing more than an inappropriate attempt to suggest that the Defendants have a high moral character. See Charles v. Cotter, 867 F.Supp. 648, 659 (N.D.Ill. 1994) ("the court strongly suspects that evidence of defendants' commendations, awards or honors could only serve the improper function of providing evidence of defendants' character for the purpose of proving action in conformity therewith on the night in question."). In the alternative, any such evidence should be barred pursuant to FRE 403 as any probative value of such evidence would be outweighed by its prejudicial effect.

### Motion *in limine* #16 to Bar Medical Examiner Photographs.

During discovery, Defendants produced copies of post-mortem photographs of Tommy Morris. Specifically, the Defendants provided the Plaintiff with photographs taken by the

medical examiner's office prior to, and during, Tommy Morris' autopsy. These photos should be excluded from the trial pursuant to FRE 402 and 403, on account of the fact they are irrelevant, overly graphic, and they have minimum probative value.

Tommy Morris' death and the cause of death (multiple gunshot wounds) are not in dispute. FRE 401 states "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Here, there is no permissible purpose to use the autopsy photographs at trial.

In addition to being irrelevant, these photos should be excluded pursuant to FRE 403. As autopsy photographs usually are, the photographs at issue are extremely graphic and show Tommy Morris' body unclothed, and during the autopsy, in an unnatural state. Further, they have the effect of lessening Tommy Morris, diminishing him and, without question, stripping him of his humanity. The jury does not need to see these photos in order to determine any issue in this case. Accordingly, the photos should be barred.

### Motion *in limine* #17 to Bar Suggestion that Witness Testimony is Coerced or the Result of Collusion to Bolster the Lawsuit.

The Plaintiff anticipates that the Defendants may offer testimony that the independent eyewitnesses to the shooting are testifying due to undue influence, coercion, or improper motives (such as collusion in an attempt to bolster the lawsuit). During discovery no evidence was uncovered of any such improper behavior. Nevertheless, at least one witness, Deputy Superintendent Roti, suggested that eyewitnesses, or people from the neighborhood of a shooting, may collude after a shooting to offer testimony bolstering a lawsuit. Mr. Roti had no evidence of any such tactics in this case – other than his own speculation.

Similarly, during the depositions of the eyewitnesses, defense attorneys asked whether the eyewitnesses discussed their knowledge with members of Tommy Morris' family – suggesting that the next of kin may have somehow colluded with witnesses to manufacture favorable evidence. Not one witness testified to telling any of Tommy Morris' relatives what they knew or saw. Although various witnesses did state that they informed the undersigned what they knew and saw, that is markedly different than telling the next of kin what they knew or saw.

As there is no evidence of any such collusion or improper motive, the Defendants should be barred from inquiring into this topic at trial. Indeed, merely asking witnesses about collusion with the next of kin (or suggesting as much by asking if they spoke to the next of kin about what they knew) in front of a jury accomplishes the improper task – it puts the suggestion before the jury that improper collusion did happen. The Defendants already know the answers to such questions due to discovery – no witness told the family members what they actually knew or saw (nor did the witnesses state that a family member told them what to say). As there is no evidence that any witness told Tommy Morris' family members what they knew, that area of inquiry should be barred.

As such, the above-referenced evidence, or inquiry therein, must be barred as it is irrelevant, has no foundation, and is based on speculation. Moreover, the unfair prejudice borne out of evidence of this nature so obviously outweighs any possible probative benefit associated with its introduction that it should be barred pursuant to FRE 403 (*i.e.*, the mere suggestion that next of kin are colluding with witnesses to garner favorable testimony is a hurdle that the Plaintiff will not likely be able to overcome).

**Motion *in limine* #18 to bar Hearsay Statements Attributed to Stanley Morris.**

The Plaintiff anticipates that the Defendants will attempt to introduce into evidence statements that Stanley Morris allegedly made to Chicago detectives. Stanley Morris was, according to the Plaintiff, the passenger in the vehicle driven by Tommy Morris before the shooting. During discovery Stanley Morris stated that: 1) neither he nor Tommy Morris were involved in any robbery on July 1, 2005; 2) that neither he nor Tommy Morris had a gun on July 1, 2005; 3) he never possessed any robbery proceeds; and 4) that he did not see the shooting.

In contrast to Stanley Morris' sworn testimony, Chicago detectives Balodimas and Hawkins testified that during an interview at Area 5 headquarters following the shooting Stanley Morris told them: 1) Tommy Morris committed a robbery; 2) Tommy Morris gave Stanley proceeds of the robbery; 3) during the vehicle pursuit that preceded the shooting Tommy Morris said "I ain't going back to the joint"; and 4) Stanley saw Tommy Morris holding a gun as he was trying to get away from the police.

All of the above statements attributed to Stanley Morris by the Chicago detectives are hearsay, as is the statement that Stanley said Tommy said (which is, obviously, double hearsay). The only reason that any of the above statements would be introduced into evidence would be for their truth. Stanley Morris is not a party to this matter. As such, Stanley's statements do not fall within any exception to the hearsay rule. Therefore, the Defendants must be barred from introducing the statements that Stanley Morris purportedly made to the Chicago detectives.

**Motion *in limine* #19 to Bar Hearsay Statements Attributed to Jonathan Reith or Paul Morelli.**

Jonathan Reith and Paul Morelli were robbed in River Forest on July 1, 2005. Subsequent to the robbery Jonathan Reith called 9-1-1. As a result of that 9-1-1 call, a chase

ensued in which police officers from Oak Park and Chicago pursued the car driven by Tommy Morris (and also occupied by Stanley Morris).

Following the shooting of Tommy Morris, Reith and Morelli were transported to Area 5 headquarters in Chicago to be interviewed. They were interviewed by Chicago and River Forest detectives. Reith and Morelli also both viewed photospreads in which they purportedly identified Tommy Morris as the man that robbed them at gunpoint. The Plaintiff disputes Tommy Morris' involvement in the robbery. Tommy Morris' involvement in the robbery is the subject of another motion *in limine*.

The Plaintiff and the Defendants have entered into an agreement whereby the Defendants will not call either Reith or Morelli to testify at trial. The Plaintiff has no intention of calling either individual to testify. Further, neither Reith nor Morelli testified by way of deposition.

Despite the fact that neither individual will testify, the Plaintiff anticipates that the Defendants will attempt to introduce into evidence statements made by Reith and Morelli. In particular, the Plaintiff anticipates that the Defendants will attempt to introduce evidence that Reith and/or Morelli identified Tommy Morris as the person that robbed them. Any such statement is pure hearsay. The identifications, as well the statements made to the Chicago and River Forest detectives by Reith and Morelli, do not fall within any hearsay exception.

As such, since any statements attributed to Reith or Morelli will be nothing more than hearsay, the Defendants should be barred from introducing any evidence regarding their purported statements.

### Motion *in limine* #20 to Bar Reference to Defendants' Ability to Pay and/or Financial Condition.

The Plaintiff anticipates that the individual Defendants may attempt to introduce evidence of their respective financial conditions during trial. Such evidence should be barred

because it is not relevant. The jury will be instructed to decide any damage award based on the evidence. Interjecting the Defendants' financial conditions will improperly invite the jury to decide damages on something other than the damages suffered by the Plaintiff.

Secondly, the Defendants should be barred from introducing such evidence because they refused to provide the Plaintiff with requested information and/or documents relative to this issue during discovery. During the years-long discovery, the Plaintiff propounded a second set of interrogatories to the Defendants – along with a corresponding request for documents – which pertained solely to the Defendants' financial conditions. The Defendants refused to provide any information regarding their financial information as it existed at the time of the shooting (even though it was requested). Instead, they only provided their respective financial conditions as of November 2009. The Defendants have never supplemented that information – even though, presumably, that information is now different and the Plaintiff specifically requested a supplement to such information in the interrogatories (notwithstanding the obligation to "seasonably" supplement under the Federal Rules of Civil Procedure).

The Defendants all reported difficult financial circumstances as of November 2009. However, since the Defendants did not provide information relative to their financial conditions on July 1, 2005, there is no way of knowing whether their November 2009 financial conditions (or their present conditions) is due to deliberate attempts to transfer wealth immediately after the shooting to frustrate any collection attempts in a future lawsuit. The Defendants cannot be allowed to benefit from their refusal to provide properly requested information during discovery. Simply put, the Defendants should not be allowed to plead poverty to the jury when they prevented the Plaintiff from determining whether that poverty is due to their own shenanigans (thereby preventing the Plaintiff from attacking the credibility of the poverty claims).

11

However, if the individual Defendants are allowed to introduce evidence regarding their respective financial conditions, the Plaintiff should be allowed to introduce evidence regarding the indemnification that the City of Chicago would provide to them for compensatory awards. Otherwise, allowing them to imply that they cannot pay for any award due to their financial conditions will unfairly prejudice the Plaintiff while also misrepresenting who would actually be responsible for the payment of damages.  See Joseph v. Brierton, 739 F.2d 1244, 1247-1248 (7th Cir. 1984)(stating that it was improper, as well as unethical, for an attorney for governmental employees who had obtained an order barring evidence of their indemnification from arguing or insinuating that they could not afford to pay a damage award).  Courts in this District have recently explained the unfairness of allowing evidence of financial condition without allowing evidence of indemnification as follows:

> …if defendants themselves inject the issue of their claimed inability or limited ability to pay an award, evidence of their right to indemnification by the [State] will become relevant. Punitive damages pose a somewhat separate problem. They do not of course create a right of indemnification, and once again it cannot be known what factors may enter into a jury's quantification of such damages if they are to be awarded. But defense counsel should be aware that if they plan to apprise the jury of the fact that the individual [defendants] will have to bear such damages out of their own pockets, fairness would require that the jury also be informed of the true situation (indemnification) as to compensatory damages.

Galvan v. Norberg, 2006 WL 1343680, at 2 (N.D.Ill. 2006).

As such, in this case, the individual Defendants should be barred from referencing their financial condition, or their inability to pay a damages award.

**Motion *in limine* #21 to Bar Reference to Next of Kin's Financial Condition.**

The Plaintiff anticipates that the Defendants may attempt to introduce the next of kin's financial condition in this case.  Such evidence is nothing more than an attempt to highlight the next of kin's poverty – thereby suggesting that this lawsuit is some type of get rich scheme or

somehow motivated by greed. As such, any such evidence should be barred as an affront to FRE 404, and because any probative value of such evidence is outweighed by its prejudice – necessitating its exclusion pursuant to FRE 403. Moreover, any such evidence should be barred because evidence with respect to a plaintiff's wealth or poverty is irrelevant. See, e.g., Van Bumble v. Wal-Mart Stores, Inc., 407 F.3d 823, 826 (7th Cir. 2005)(evidence regarding a plaintiff's relative wealth or poverty is irrelevant and prejudicial to a jury's determination of damages); see also Pucci v. Litwin, 1993 WL 405448 (N.D.Ill. 1993)(evidence of plaintiff's financial condition is irrelevant and prejudicial).

### Motion *in limine* #22 to Bar Reference to the Next of Kin Receiving Life Insurance Proceeds.

The Plaintiff anticipates that the Defendants may ask her (or Tommy Morris' other next of kin) whether there was any life insurance payout as a result of Tommy Morris' death. Evidence of any insurance payout is clearly not relevant to any issue in this case. Further, such evidence will improperly invite the jury to decide damages on something other than the damages suffered by the Plaintiff, and will improperly encourage the jury to discount any damages suffered by the insurance payout. Moreover, any such evidence has little, if any, probative value to any issue in this case, whereas its prejudicial effect is clear – and should therefore be barred pursuant to FRE 403.

### Motion *in limine* #23 to Bar Suggestion that a Particular Defendant should be found not Liable Because the Plaintiff does not Personally Know why he should be found Liable.

The Plaintiff anticipates that the Defendants will ask her to identify who she believes is liable in this case (or, put another way, who wronged Tommy Morris), and why she believes that an individual Defendant should be held liable. The Defendants should be barred from doing so.

In civil rights matters, individuals commonly do not know who did what, or who should be held liable for what. Instead, they know that they were wronged and they want justice in the form of compensation from the responsible parties. To avoid falling victim to their own ignorance, people hire lawyers to represent them in legal matters. They depend upon their counsel to identify the responsible parties and to pursue all proper avenues for relief. There is no legal requirement that each plaintiff in each civil rights lawsuit identify each constitutional provision that was violated (and by whom) in order to prevail in such a case. Given the predominance of poor, uneducated plaintiffs that pursue such matters, any such requirement would effectively slam shut the courthouse doors to most civil rights litigants.

The Defendants will not be able to point to any legal authority that requires the Plaintiff to articulate, from the witness stand, which Defendant is liable for which constitutional violation. Her inability, or ability, to do so is not relevant to any issue in this case. It will only confuse the Jury regarding the law and allow it to assume that, if the Plaintiff cannot pass the Defendants' legal test, she should not prevail in her claims. Allowing this to happen is so severely prejudicial to the Plaintiff, and clearly confusing to the Jury, that the Defendants should be barred from inquiring into this topic as it is both irrelevant and because it runs afoul of FRE 403.

### Motion *in limine* #24 to Bar Suggestion that the Plaintiff is Asking for more Compensation than she Expects to be Awarded.

The Plaintiff is seeking to bar the Defendants from suggesting that she will ask for more compensation than she expects to receive from the Jury. Any such evidence has no bearing on any issue in this case. It is hard to conceive of any relevant aspects to such evidence. Such a suggestion would be meant to indicate that the Plaintiff, or her attorneys, is pursuing this matter to get rich, or to ascribe some other improper purpose (or moral deficiency) upon the Plaintiff (or her attorneys). If there is some relevancy to such evidence, its probative value would be

substantially outweighed by the potential prejudice to the Plaintiff – and therefore should be barred pursuant to FRE 403.

### Motion *in limine* #25 to Bar Reference to how the Plaintiff's Attorneys are being Compensated.

The Plaintiff seeks to bar the Defendants from discussing, in any fashion, how the Plaintiff's attorneys are being compensated in this matter. Such evidence is irrelevant. See, e.g., Pucci v. Litwin, 1993 WL 405448 (N.D.Ill. 1993)(evidence that a law firm was being paid on a partial contingency was irrelevant and prejudicial). The only conceivable purpose to such evidence would be to sully the Plaintiff's attorneys, or to suggest that this lawsuit is being pursued for greed. Obviously, suggesting as much is not only so clearly prejudicial that it should be barred per FRE 403, but it would also violate FRE 404. The Defendants should not be given the opportunity to discuss the Plaintiff's attorneys' compensation at trial.

### CONCLUSION

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that the Defendants be barred from inquiring into, or at any time referring to, the stated matters.

Respectfully submitted by,

s/Basileios J. Foutris
BASILEIOS J. FOUTRIS
Attorney for Plaintiff
FOUTRIS LAW OFFICE, LTD.
53 West Jackson, Suite 252
Chicago, Illinois 60604
312-212-1200
bfoutris@foutrislaw.com

## CERTIFICATE OF SERVICE

The undersigned, attorney of record herein, hereby certifies that on May 2, 2011 the foregoing **PLAINTIFF'S MOTIONS *IN LIMINE* 12-25** was electronically filed with the Clerk of the U.S. District Court using the CM/ECF System, along with judge's courtesy copies being delivered; which will send notification of such filing to: Scott J. Jebson at sjebson@cityofchicago.org; Jonathan Clark Green at jonathangreen@cityofchicago.org; and Andrea Elizabeth Cook at andrea.cook@cityofchicago.org.

s/Basileios J. Foutris
BASILEIOS J. FOUTRIS
Attorney for Plaintiff
FOUTRIS LAW OFFICE, LTD.
53 West Jackson, Suite 252
Chicago, Illinois 60604
312-212-1200
bfoutris@foutrislaw.com