**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| DELORES MORRIS, as Special Administrator | ) | | |
| of the Estate of TOMMY MORRIS, | ) | | |
| Deceased, *et al.*, | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| v. | ) | NO. | 07 C 3409 |
| | ) | | |
| CITY OF CHICAGO, *et al.*, | ) | | |
| | ) | | |
| Defendants. | ) | Judge Marovich | |

<u>**DEFENDANTS' MOTIONS IN LIMINE**</u>

Defendants, Daniel Conway, Jeffrey Edwards, Patrick Mulkerrin, Derrick Glowacki and William Lepine, by their attorneys, Scott Jebson, Chief Assistant Corporation Counsel Jonathan Clark Green, Senior Counsel, and Andrea Cook, Assistant Corporation Counsel, and pursuant to the Federal Rules of Evidence, respectfully move this Court to enter orders precluding Plaintiff, her counsel and her witnesses from adducing at trial testimony or evidence relating to or making any references to the following:

**1.      Exclude Any Testimony, Evidence, Argument Or Comments Regarding Recent Publicized Events Concerning Allegations Of Police Misconduct.**

Within the last few months, there have been several highly publicized and emotionally charged reports of police misconduct.  Defendants anticipate that plaintiff may attempt to mention, discuss or refer to these or other recent events regarding alleged police misconduct. Because mention or evidence of any publicized incidents involving the CPD would serve no proper purpose, and would only serve to improperly inflame the emotions of the jury and greatly prejudice defendant, it should be excluded.  *Clayton v. Bellatti*, 70 Ill.App.2d 367, 374, 216

1

N.E.2d 686, 690 (4th Dist. 1966); *Duff v. Ewing*, 60 Ill.App.2d 382, 387, 208 N.E.2d 320, 321

(3d Dist. 1965) (improper questions insinuating plaintiff was accident prone merited new trial);

*Bednar v. Commonwealth Edison*, 156 Ill.App.3d 568, 575, 509 N.E.2d 687, 691 (3rd Dist.

1987)(appealing to prejudice of jury against public utilities is improper). Accordingly, plaintiff

should be precluded from making any references to any publicized instances of alleged police

misconduct. *Saunders v. City of Chicago*, 320 F.Supp.2d 735, 740 (N.D.Ill. 2004)(granting

identical motion).

**2.      Exclude Evidence Of Complaints And/Or Lawsuits Against The Officers.**

Defendants seek to bar Plaintiff from offering any testimony, evidence or argument

regarding the disciplinary records of any of the officers or other police department personnel

involved in this incident. Defendants' motion should be granted because such disciplinary

records are irrelevant and highly prejudicial to the issue of Defendants' conduct in this case.

Any attempt to introduce testimony and evidence relating to instances of alleged

misconduct by Defendants and other non-defendant police officer witnesses who may be called

to testify at trial should be barred. This evidence would most likely be, but not necessarily

limited to, prior lawsuits and citizens' complaints against Defendants and other police officer

witnesses. Defendants move to bar this evidence because it constitutes improper character

evidence or propensity evidence under Fed.R.Evid. 404. Moreover, such evidence is irrelevant,

hearsay, and any probative value it may have is substantially outweighed by the danger of unfair

prejudice, confusion of the issues, and misleading the jury. See Fed. R. Evid. 402 and 403.

Any information or allegation that Defendants may have acted wrongfully in the past is

nothing more than so-called "bad acts" evidence or "propensity evidence." Propensity evidence,

however, is inadmissible under Fed.R.Evid. 404(b) to prove that a party acted on the occasion in question consistent with his alleged bad character. *See Huddleston v. U.S.*, 485 U.S. 681, 685 (1988); *U.S. v. Shriver*, 842 F.2d 968, 974 (7th Cir. 1988). In this case, Plaintiff's only purpose in introducing or suggesting such evidence would be to attempt to taint the jury into believing that accusations of alleged misconduct had been brought against the officers, and therefore it is likely that the officers acted in a similar manner under the circumstances presented here.

Although Rule 404(b) permits the admission of evidence of other acts, if such evidence is directed toward establishing a matter in issue other than a defendant's propensity to commit the act charged, Plaintiff will not be able to satisfy his burden under Rule 404(b) of explicitly articulating which exception to the general rule applies. *U.S. v. Zapata*, 871 F.2d 616, 620-21 (7th Cir. 1989), Moreover, even if there were some probative value in admitting this evidence, that probative value would be overwhelmingly outweighed by the danger of unfair prejudice. Fed. R. Evid. 403; see also, *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2nd Cir.1991) (holding that the admission of evidence of other complaints against officers was irrelevant and overwhelmingly prejudicial to the defendant); *Lataille v. Ponte*, 754 F.2d 33, 34 (1st Cir. 1985) (prejudicial error to admit past disciplinary record). Finally, these same arguments would also apply if Plaintiff sought to introduce any evidence of other litigation and/or complaints against any non-defendant police officer witnesses who might be called to testify in these proceedings.

3. **Bar Allegations Of A "Code Of Silence."**

Defendants seek to bar Plaintiff from offering any testimony, evidence, or argument that police officers in general lie, conspire, cover-up or otherwise maintain a "code of silence" to protect their fellow officers. This Court should exclude such evidence because it is not relevant

to the jury's determination of the credibility of the police testimony in this case and would be extremely prejudicial to Defendants.

It is anticipated that Plaintiff will attempt to introduce at trial generalized testimony, evidence, or argument of an alleged police "code of silence" maintained by the Chicago Police Department and/or police in general to protect fellow officers accused of wrongdoing. However, evidence is admissible at trial only if it makes the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Moreover, even when evidence is relevant, it should be excluded if its prejudicial effect substantially outweighs its probative value. Fed R. Evid. 403.

At trial, the only relevant inquiry is whether Defendants used excessive force on Plaintiff, and whether Defendants failed to intervene in during the shooting involving the decedent. Given this narrow inquiry, it is simply beyond dispute that general evidence of a police "code of silence" or similar slander has no bearing whatsoever on the jury's assessment of the Defendants' conduct in this case. Such generalized evidence has no specific relationship to the officers, former officers, or other police department personnel testifying in this case, it is not relevant to the jury's determination of their credibility. *See People v. Currie*, 84 Ill. App. 3d 1056, 1061-62 (1st Dist. 1980) (excluding evidence that police officers had motive to lie on stand to cover up police practice of using ruse to enter premises during drug raids). See also *Shaw v. City of New York*, No. 95 Civ. 9325, 1997 WL 187352, at *7-8 (S.D.N.Y. Apr. 15, 1997) (excluding evidence of blue "code of silence" by which New York City police officers protect fellow officers and lie if necessary to do so); *Heflin v. City of Chicago*, No. 95 C 1990, 1996 WL 28238, at *4 (N.D. Ill. Jan. 22, 1996) (granting unopposed motion to exclude evidence that

4

police officers generally protect or cover-up other officers' misconduct). Moreover, as the court warned in <u>Shaw</u>:

> If [evidence of a police "code of silence"] were held admissible here, it logically would be admissible in every suit, civil or criminal, in which a police officer was alleged to be lying to support the testimony of a fellow police officer. Indeed, it would be admissible in every civil and criminal case in which even a single police officer testified. The Court declines to establish such a precedent.

<u>Id</u>. This Court too should decline to open the floodgates to such evidence.

Furthermore, even if general evidence of a police "code of silence" were somehow relevant to the matters at issue or the credibility of testimony in this case, and it is not, this Court should nonetheless exclude such evidence because its prejudicial effect substantially outweighs its probative value. Indeed, given its lack of connection to the specific issues and persons in this case, "its probative value is very, very slim, and its prejudicial [impact] is very, very high." <u>Shaw</u>, 1997 WL 187352, at *7. Accordingly, this Court should bar Plaintiff from presenting at trial any testimony, evidence or argument that police officers in general lie, conspire, cover-up or otherwise maintain a "code of silence" to protect their fellow officers.

**4.      Any Testimony Or Argument Regarding Settlement Discussions Must Be Barred Pursuant To Rule 408.**

Pursuant to Rule 408, any testimony from plaintiff or any of his witnesses with regard to any attempts made to settle this matter, including, but not limited to testimony that plaintiff offered any settlement proposal, testimony that Defendant made any offer to dispose of this case, or testimony alleging that Defendant did not accept Plaintiff's attempt to settle this matter should be barred. Fed.R.Evid. 408.

5.    **Bar Evidence Regarding Training Of Police Officers Or Training Policies And Procedures By The City Of Chicago.**

Defendants seek to bar Plaintiff from arguing or eliciting testimony as to how the City of Chicago trains, disciplines, monitors or controls police officers.  The City of Chicago is not a party to the case except for purposes of indemnification. Furthermore, although Plaintiff did file a claim under *Monell*, it has been bifurcated and should not be considered in the current proceedings. To impose liability on a municipality under §1983, Plaintiff must comply with the framework established by the Supreme Court in *Monell v. New York City Dep't of Social Services*, in which the purported constitutional injury must be proximately caused by the execution of an official government policy or custom.  436 U.S. 658, 694 (1978).   Accordingly, such information is irrelevant to the issues in this case, is highly prejudicial, and is likely to confuse the jury.  Fed. R. Evid. 401 and 403.  In Illinois, "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109.   Thus, if Defendants are not liable to Plaintiff in the instant case, neither can the City be liable to Plaintiff.  *See Guidry v. Boyd*, 2007 WL 2317174, *15 (N.D.Ill. 2007). Moreover, as noted, any questions regarding training would relate the plaintiff's *Monell* claim, which has been bifurcated.  Therefore, any reference, question or testimony regarding the training that Defendant Officers received or how other police officers are trained should be barred.

Defendants anticipate that Plaintiff may attempt to elicit testimony regarding Defendant Officers' training in courtroom procedures.  For example, during Officer Edward's deposition, he  testified that he was trained to testify in court and that the training consisted of being professional, telling the truth and "being clean." This testimony is entirely irrelevant to whether

excessive force was used in Tommy Morris' shooting. Therefore, any reference to the Defendant Officers' training in courtroom procedures (and any other training the Defendant Officers received) should be barred as being irrelevant to the issues in this case.

**6.      Exclude Testimony Alleging The Violation Of Internal Police Department Directives By The Defendant's Employees.**

Defendants seek an order barring Plaintiff, Plaintiff's attorneys and witnesses from introducing testimony, evidence, or argument regarding the General Orders of the Chicago Police Department. Chicago Police Department General Orders contain written directives for police activities both in specific situations and for general conduct. Any attempt to introduce certain General Orders promulgated by the Chicago Police Department in an attempt to suggest that Defendants violated the procedures of the Chicago Police Department in the course of their contact with Plaintiff. Defendants respectfully request this Court bar all references to General Orders of the Chicago Police Department because such evidence is irrelevant, would lead to confusion of the jury and its probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues. *See* Fed. R. Evid. 401, 402, 403.

Introduction of evidence relating to General Orders on the federal claims would be improper because "the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson v. City of Chicago*, 472 F.3d 444, 454, (7th Cir. 2006). Moreover, "it may be that [the Defendant's] possible violation of the CPD's General Orders is of interest to his superiors when they are making discipline, promotion or salary decision, but that information was immaterial in the proceedings before the district court and was properly excluded." *Id.* at

7

455.  As the Seventh Circuit has spoken on this issue, general orders should not be admissible in this case.

The internal police guidelines are also irrelevant to Plaintiff's state law claims. Under Illinois law, a violation of self-imposed rules or internal guidelines, such as police department regulations and general orders, do not normally establish or impose a legal duty.  *Morton v. City of Chicago*, 286 Ill.App.3d 444, 454 (1st Dist. 1997); *Blakenship v. Peoria Park District*, 269 Ill.App.3d 416, 422-23 (3rd Dist. 1995).

 Accordingly, Plaintiff should not be permitted to inject the possibility of a rules violation into these proceedings.  Because the General Orders of the Chicago Police Department are not indicative of any legal duty, whatever probative value they may have is greatly outweighed by the potential for prejudice to Defendants caused by the jury placing undue weight on their value. Accordingly, any reference to the General Orders of the Chicago Police Department should be barred.

**7.     Bar Prior Arrests of the Defendant Officers.**

All testimony regarding the Defendant Officers' prior arrests should be barred. Defendants anticipate that Plaintiffs may attempt to elicit testimony regarding whether the Defendant Officers have prior arrests. In his deposition, Officer Edwards admitted that during college he was arrested for driving under the influence.  Driving under the influence of alcohol does not qualify as a felony or a misdemeanor involving dishonesty; therefore it does not qualify as valid impeachment.  The court should bar plaintiff from referring to it. This evidence is irrelevant and any probative value it may have is substantially outweighed by the danger of

8

unfair prejudice, confusion of the issues, and misleading the jury.  See Fed. R. Evid. 401, 402 and 403.

**8.      Allegations Of Racial Profiling Or Any Other Form Of Race-Based Discrimination**.

Defendants anticipate that plaintiff, or her lawyers, through testimony and/or argument, may attempt to attribute the shooting of Tommy Morris racial animus.  Argument or evidence concerning race is irrelevant, speculative and unduly prejudicial.  There is no evidence that the shooting involving Plaintiff had any racial implications.  Generic references to race, without a more specific link to the facts of the case, are irrelevant and sufficiently prejudicial to amount to reversible error.  *Jackson v. C.T.A.*, 133 Ill.App.2d 529, 533-4, 273 N.E.2d 748, 751 (1st Dist. 1971).

**9.      All Non-Party Witnesses Should Be Excluded From The Courtroom During Trial Testimony.**

Defendants move this court to exclude all witnesses from the courtroom during the opening statements and testimony of any and all other witnesses.

**10.     Defendant's Alleged Failure To Call Witnesses Or Produce Records.**

The court should bar any mention, inference or argument that the defendant failed to bring any witnesses or documents on its behalf.  This is a civil case, and as such, plaintiff bears the burden of proving his case.  The defendants are under no obligation to put on a defense or call witnesses in order to support a verdict in its favor.

**11.     Plaintiff Should Be Barred From Asking The Jury To "Send A Message" Or Making A Similar Argument.**

Plaintiff should be prohibited from making any argument that the Jury should "send a message" to the defendants or that the jury should somehow punish the City of Chicago or the

Defendant Officers. As a matter of law, the plaintiff can not recover punitive damages from the City as a result of this occurrence. *See* 745 ILCS 10/2-102; *City of Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981). Sending a message, or punishment, cannot form the basis for any damages other than punitive damages. Moreover, plaintiff is not seeking punitive damages against the Defendant Officers. Accordingly, plaintiff should not be permitted to imply to the jury that punishment can serve as a legitimate basis for an award against the defendants. Any such implication would be unfairly prejudicial to the Defendants. (See Fed. R. Evid. 403 (West 2010)).

**12.    Defendants Request That Once A Witness Is Called To Testify, No Attorney Shall Confer With That Witness About His Or Her Trial Testimony Until The Termination Of The Testimony.**

**13.    Bar Any Testimony, Evidence, Argument, or Innuendo That Any Non-defendant Police Officers Engaged in Misconduct.**

Defendants move for an order in limine barring any testimony, evidence argument, or innuendo from Plaintiff, Plaintiff's counsel, or any witness, that any non-Defendant police officers, non-Defendant Chicago Police Department personnel in this matter, or any other City of Chicago employee engaged in any misconduct or caused any injury to Plaintiff in any manner should be barred. Defendants cannot be held liable for the actions of another person. *Martin v. Tyson*, 845 F.2d 1451, 1455 (7th Cir. 1988); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Walker v. Rowe*, 791 F.2d 507, 508 (7th Cir. 1986); *O'Neil v. Krzeminski*, 839 F.2d 9, 11 (2nd Cir. 1988); 745 ILCS 10/2-204.

To allow any testimony or argument with regard to an alleged injury caused by another City of Chicago Police Officer or other City of Chicago employee invites the jury to find against Defendants if they wanted to compensate Plaintiff for any such alleged injury and/or to punish

10

Defendants for the alleged actions of another individual.  Accordingly, Plaintiff, Plaintiff's attorney, and witnesses must be barred from mentioning or referring to any alleged misconduct by any non-Defendant police officer, Chicago Police Department personnel, or any other City of Chicago employee.

**14.      Bar Any Testimony or Evidence Regarding Indemnification by the City of Chicago.**

Any comment on indemnification by the City of Chicago should be precluded.  Whether or not the City of Chicago indemnifies Defendants is completely irrelevant to the issue of whether Defendants are liable for any acts they may have performed that proximately caused an the decedent's death. It is undisputed that the City has agreed to indemnify the officers for any compensatory damages assessed in this case.  Thus, the only reason to mention the City is to signal the jury that "deep pockets" are available to pay any judgment. Such a signal runs afoul of federal and Illinois law that evidence of indemnification against liability is inadmissible as irrelevant and highly prejudicial to the issue of liability. Fed.R.Evid. 411; *Walker v. Sa*enz, 1992 WL 317188, *3 (N.D.Ill. Oct. 27, 1992); *Larez v. Holcomb*, 16 F.3d 1513, 1518 (9th Cir. 1994) (holding that instructions to jury on indemnification in § 1983 action required new trial); *Green v. Baron*, 879 F.2d 305, 310 (8th Cir. 1989) (stating that instructions concerning indemnification are extremely prejudicial); *Griffin v. Hillke*, 804 F.2d 1052, 1057 (8th Cir. 1986) (declaring indemnification instructions to constitute reversible error).

Knowledge that the City of Chicago will indemnify Defendants for possible damages might encourage jurors to find for Plaintiff—regardless of the facts presented at trial.  Such knowledge can also lead jurors to inflate an award out of sympathy or other irrelevant factors.

**15.    Limit Publication Or Display Of Autopsy Photos To The Jury.**

Certain autopsy photos show graphic displays of the open wounds and incisions made by the medical examiner which are irrelevant, highly prejudicial, and serve only to arouse the passions of the jury.  The Illinois Supreme Court has held that autopsy photographs should be excluded unless the cause of death is at issue and the photographs are necessary to supplement the medical examiner's testimony. People v. Fierer, 151 Ill.App.3d 649, 657, 503 N.E.2d 594, 599, 104 Ill.Dec. 879, 884 (1987). Autopsy photographs may be admitted only for the limited purpose of proving:

> the nature and extent of the injuries and the force used to inflict them; the position, condition and location of the body; the manner and cause of death; to corroborate a defendant's confession and to aid in understanding the testimony of pathologist or other witness.

People v. Anderson, 237 Ill.App.3d 621, 631, 604 N.E.2d 546, 552-53, 178 Ill.Dec. 290, 296-97 (1992)(citing People v. Henderson, 142 Ill.2d 258, 320, 568 N.E.2d 1234, 1263-64 (1990)). Defendants request plaintiff show Defendants what autopsy photos, if any, prior to showing them to a witness or to the jury so that Defendants can move this court to exclude certain photos the Defendants deem improper.

**16.    Any Comment On The Fact That The Defendants Have Three Attorneys Representing Them In This Litigation**.

**17.    Bar Evidence Or Argument That The Defendants, Or Their Attorneys Or Agents Ever Delayed The Trial Of This Cause, Or That The Plaintiff Has Waited A Long Time For Her Day In Court.**

**18.    Any Implication Or Testimony That Chicago Police Department Personnel Are Being Paid By The City To Appear In Court And Testify.**

Plaintiff has listed Chicago Police Department personnel as witnesses her Rule 26(a) disclosures and in the draft pre-trial order. Thus, plaintiff is relying on the City to produce Chicago Police Department personnel in order to testify on behalf of plaintiff.  It would be disingenuous for plaintiff to elicit testimony that these or other police personnel are being paid for their time spent in court.

**19.    Bar Testimony Or Questioning Regarding The Fraternal Order Of Police Disclaimer Given In Official Reports Concerning Police Internal Investigations Of Alleged Misconduct.**

 Lodge No. 7 of the Fraternal Order of Police, the bargaining unit for Chicago police officers, instructs its members to provide a disclaimer before completing reports or statements related to internal police department investigations.  This disclaimer essentially states that the officer is not providing the statement voluntarily, but based on the direct order of a superior officer.  Such a disclaimer allows police officers to protect their Fifth Amendment right against self-incrimination while allowing the Chicago Police Department to conduct internal investigations of officers involved in certain incidents.  Said statements are coerced from the officers from their superiors in an effort to progress the investigations.  The law is clearly established that the Fourteenth Amendment protection against coerced statements prohibits their use in subsequent proceedings, when those statements were obtained under the threat of losing their job.  Hence, those statements cannot be used in the instant case. *See Garrity v. State of New Jersey*, 385 U.S. 493, 87 S.Ct. 616 (1967).

Allowing Plaintiff to question an officer on this issue would confuse the jury and would create a substantial prejudice to the defendant officers.  In addition, such questioning would

undermine an important element of the Chicago Police Department's ability to question officers, without delay, in internal investigations. Permitting introduction or comment regarding the disclaimer would require the City to introduce witnesses and documents from the police union to explain why the disclaimer appears in the statements and reports. This would result in a wholly collateral litigation of the legitimacy of the disclaimer that would both distract the jury and unduly lengthen the trial with additional side issues and witnesses. To prevent prejudice to defendants, this Court should permit the defendants to redact the disclaimer from any official police reports and bar Plaintiff from referring to it prior to the introduction or use of any such documents.

**20.    Bar Any Mention That The Media Was At The Scene Of The Shooting, Or That Any Media Commented On, Or Was Involved In Covering This Incident Or That Any Witness Or Anyone Contacted The Media Regarding This Incident.**

**21.    Any Argument, Testimony, Evidence, Mention Or Suggestion Regarding Other Chicago Police Department Shootings Or Incidents, Including That Any Defendant Officer Has Been Involved In Other Police Shootings.**

**22.    Bar Testimony Or Opinion From The Medical Examiner That The Cause Of Death Regarding Tommy Morris Was A Homicide.**

The Cook County Medical Examiner's office classifies all deaths at the hands of another individual as a homicide. Obviously, the meaning of homicide to jurors will be that the shooting was a crime, or imply that the shooting was wrongful. In reality, whenever some dies at the hands of the other, the Medical Examiner is directed to list the cause of death as homicide. The Medical Examiner, by it's classification, does not make any determination whether there was any wrongdoing that took place. The classification of the death by the medical examiner's office as homicide is irrelevant to any issue in this case, is misleading, and is unfairly prejudicial to defendants.

14

**23.    Bar Plaintiff's Witness Felicia Monroe from Testifying Regarding Any Comment That Any Officer Mentioned Catching and Killing Stanley Morris.**

Plaintiff's witness, Felicia Monroe, testified at her deposition that an officer told her that if they had caught they guy they were chasing (meaning Stanley) they would have killed him. His alleged statement is clearly hearsay and should be barred.  Moreover, it would be unfairly prejudicial to defendants to allow such hearsay testimony, and such testimony would be irrelevant to the issues in this case.

**24.    Bar Any Mention That The Pursuit That Led To Tommy Morris' Death Was Improper.**

Defendants anticipate that Plaintiff may attempt to argue that the pursuit leading up to Tommy Morris' death was improper.  Any argument regarding whether the pursuit was improper in any way should be barred because (1)  there is no evidence that the pursuit was improper; (2) even if there was evidence that the pursuit was improper (which there is not), the question of whether the pursuit was improper is not relevant to the issues in this case; and (3) even if the propriety of the pursuit was at issue, it is undisputed that none of the Defendant Officers were involved in the pursuit of Tommy and Stanley Morris. Therefore, Plaintiffs should be barred from arguing that the pursuit that preceded the shooting was improper.

**25.    Bar any testimony regarding police officers finding a gun under the passenger seat of the Morris' car.**

During Reshawn Jackson's deposition, she testified that her sister told her that the Police found a gun under the passenger side of the Morris' car. This testimony should be barred because it is hearsay.  See Fed. R. Evid. 402 and 403.

**26.    Bar mention about police beating up Kelvin Doyle**

Plaintiff may attempt to elicit testimony that Kelvin Doyle was beaten by police

officers during the Tommy Morris' shooting and Stanley Morris' arrest. Kelvin Doyle was at a barbeque that was taking place at the time of the shooting. There was testimony that certain police officers (not the defendant officers) roughed up Kelvin Doyle believing that he was one of the offenders in the robbery. This testimony has no bearing on the issues to be decided in this case and any testimony regarding this allegation would be highly prejudicial. Additionally, the alleged beating does not involve the Defendant Officers and therefore should be barred.

**27.    Bar Evidence of Grief, Sorrow and Mental Suffering To Determine Damages**

Defendants anticipate decedent's family will testify regarding their grief, sorrow and mental suffering at decedent's death as it relates to plaintiff's Wrongful Death Claim. Such testimony, however, is specifically excluded as allowed damages under the Wrongful Death Act, and therefore should be barred. Loss of society as it relates to plaintiff's Wrongful Death Claim is defined in Illinois Pattern Jury Instruction # 31.11 as "the mutual benefits that each family member receives from the other's continued existence, including love, affection, care, attention, companionship, comfort, guidance and protection." (Ill. Pattern Jury Instruction, Civil 2006 Ed). Importantly, grief and sorrow are specifically excluded as recoverable damages. Additionally, grief and sorrow are expressly excluded as recoverable damages in determining pecuniary loss in Illinois Pattern Jury Instruction 31.07. (Ill. Pattern Jury Instruction, Civil 2006 Ed). Moreover, mental anguish is not recoverable in a wrongful death claim. *Smith v. Mercy Hospital*, 203 Ill.App.3d 465,478 (1st Dist. 1990).

Defendants note that the Illinois Legislature modified the Wrongful Death Act to permit recovery of damages for grief, sorrow and mental suffering of the lineal next of kin. However, this amendment applies to all causes of action accruing on and after May 31, 2007. 740 ILCS

180/2.  In this case, the cause of action accrued prior to May 31, 2007 and, therefore, plaintiff is

not entitled to grief, sorrow or mental suffering as an element of damages.

**28.    Bar Any Evidence of Decedent's Funeral, Funeral Program, and Funeral Expenses.**

Plaintiffs should be barred from introducing evidence of the decedent's funeral, funeral

program and expenses because the decedent's funeral expenses are not recoverable under the

Illinois Wrongful Death Act, 740 ILCS 180/1, and therefore are irrelevant. *Graul v. Adrian*, 32

Ill.2d 345 (1965); *see also Saunders v. Schultz*, 20 Ill.2d 301 (1960)(widow's action individually

for funeral and medical expenses distinct from wrongful death action.)

**29.    Bar Testimony Or Reference That The Independent Police Authority Or Other
Department Within The City Investigated The Shooting For Potential Wrongdoing
And Bar Reference To The "Roundtable" Procedure Of The Investigation.**

Plaintiff should be barred from offering evidence or testimony that the Office of

Professional Standards or any other department within the City investigated the Defendant

Officers for potential wrongdoing.  The post-shooting and investigation and its findings is a post-

accident remedial measure and thus inadmissible.  Illinois law is clear that post-incident remedial

measures are not admissible to prove culpability.  *Herzog v. Lexington Township*, 167 Ill. 2d 288,

299 (1995).  This rule of evidence has several legal rationales.  First, it encourages the public

policy of encouraging improvements to increase public safety.  *Bulger v. CTA*, 801 N.E. 2d 1127

(1st Dist. 2003).  Second, subsequent remedial measures are not considered probative of prior

negligence (or in this case willful and wanton conduct) because later carefulness may simply be

an attempt to exercise the highest standard of care.  *Id.*  Third, evidence of post-accident

remedial measures is highly prejudicial because a jury may improperly view such measures as an

admission of liability.  Introduction of this material into evidence will irreparably and unfairly prejudice defendants in this case.  *Id.*

   Importantly, the standard that the police department uses to determine violations of the Police Department's internal general orders is ***not a legal standard*** but one that is used exclusively by the Chicago Police Department.  A finding of "sustained" cannot be equated with "negligence" let alone "willful and wanton misconduct" and therefore, would only serve to confuse the jury with an irrelevant and inapplicable standard.  In *Morton v. City of Chicago*, 286 Ill. App. 3d 444, 454 (1st Dist. 1997), the court stated,

> "Indeed, the violation of self-imposed rules or internal guidelines, such as [Chicago Police Department's] General Order 81-8, does not normally impose a legal duty, let alone constitute evidence of negligence, or beyond that, willful and wanton conduct."

*See also, Wade v. City of Chicago*, 364 Ill.App.3d 773, 781 (1st Dist. 2006) (citing *Morton* for the exact language quoted above and holding that evidence of violations of Chicago Police Department's internal general orders should have been excluded).

   Defendants have no objection to either party calling a witness who took a statement from a party or witness to perfect impeachment.  However, if that is the case, Defendants request that the person who is called from the City who took the statement should not be referred to as working for OPS or IPRA, but rather be referred to as someone working for City who took a statement.

**30.     Bar Testimony That The Chicago Police Department Did Not Properly Follow-Up Or Investigate The Shooting, Including, But Not Limited to, By Them Not Testing The Handgun Found Next to the Decedent For Fingerprints, Blood or DNA, and That Tommy Morris' Fingerprints, DNA and Blood Were Not Found on the Gun Located next to him.**

   The Illinois State Crime Lab, which is the entity responsible for conducting forensic tests on evidence found by the Chicago Police Department, did not test the gun which was located

next to Tommy Morris for evidence of latent fingerprints, blood or DNA. Defendants anticipate that plaintiff will attempt to improperly imply or outright state by way of innuendo or by questioning of certain witnesses that Tommy Morris' fingerprints, DNA or blood was not found on the gun or that that the City of Chicago, its police department or OPS improperly investigated this shooting by not requesting the Illinois State Crime lab to test the gun for fingerprints, blood or DNA. Any such implication that Tommy Morris' fingerprints, DNA or blood was not found on the gun would be a misstatement of the evidence since the gun was never tested for those things. Moreover, it would be equally improper for Plaintiff to argue or introduce evidence that the City of Chicago, its police department or OPS should have requested the Illinois State Crime Lab to conduct such tests. Any such questioning or presentation of evidence is irrelevant to the underlying claims in this case, supports no independent cause of action, and would only be offered to prejudice the jury against the defendants. The City of Chicago is only named as a defendant via a respondeat superior theory for the actions of the shooting officers, Defendants Edwards and Conway. Neither Edwards nor Conway (or any other individual defendant officer) had any involvement in how the investigation of the shooting was to take place. Moreover, any alleged improper investigation of the shooting would, obviously, have occurred after the shooting and could not have therefore caused the death of decedent. Further, pursuant to section 4-102 of the Illinois Tort Immunity Act, plaintiff is not entitled to *any* police investigation, let alone one plaintiff thinks is proper. Section 4-102 states:

> "Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals. This immunity is not waived by a contract for private security service, but cannot be transferred to any non-public entity or employee."

19

As such, plaintiff should be barred from implying via questioning or attempting to introduce evidence that that:

1. The gun found next to Tommy Morris was never tested for fingerprints;

2. The gun found next to Tommy Morris should have been tested for fingerprints;

3. That Tommy Morris' fingerprints were not found on the gun;

4. The gun found next to Tommy Morris was never tested for DNA;

5. The gun found next to Tommy Morris should have been tested for DNA;

6. That Tommy Morris' DNA was not found on the gun;

7. The gun found next to Tommy Morris was never tested for blood;

8. The gun found next to Tommy Morris should have been tested for blood;

9. That Tommy Morris' blood was not found on the gun; and

10. That the City of Chicago, its police department or OPS improperly conducted the investigation of the shooting.

**31. Bar Evidence That Any Defendant Officer Or Other Police Personnel Or Other Emergency Personnel Delayed Or Defeated The Rendering Of Medical Care To Decedent.**

Defendants anticipate that plaintiffs may suggest that police or other emergency personnel prevented timely or effective treatment to decedent or delayed or defeated the rendering of medical care to decedent. Plaintiffs have voluntarily dismissed her claim for failure to provide Morris medical care. Moreover, the recording of the police radio dispatches plainly indicates that medical personnel was immediately summoned by the officers involved in this shooting and that fire and paramedic personnel arrived quickly from short distances away to render aid to Tommy Morris.

**32.      Bar Steven Woodfork, Kelvin Doyle as Witnesses At Trial.**

Plaintiff has identified twelve witnesses who will testify that the decedent did not have a gun at the time he was shot by the police.  Two of those witnesses are Steven Woodfork and Kelvin Doyle.   Defendants have gone to great lengths to locate and depose all twelve alleged eye witnesses plaintiff disclosed, including making two trips to Denver, Colorado to depose seven of those witnesses who reside there.

Steven Woodfork is one of the twelve eye witnesses defendants attempted to depose. Defendants in fact served Mr. Woodfork with a deposition subpoena, but he never showed for his deposition.  Plaintiff's attorney has informed defense counsel that he has been unable to locate Mr. Woodfork as well.  Defendants would be unfairly prejudiced if Mr. Woodfork is suddenly located and presented as a witness to testify at trial given that Mr. Woodfork has failed to show for his deposition.  As such, he should be barred as a witness.

Kelvin Doyle is another alleged witness to the shooting identified by plaintiff. Defendants flew to Denver, Colorado to take Kelvin Doyle's deposition.  Kelvin Doyle showed up at his deposition, but stated at his deposition that he had filed his own lawsuit related to this very incident and he wanted to speak to his attorney first prior to sitting for his deposition. Because of Mr. Doyle's representations, his deposition did not proceed because he wanted to confer with his attorney before being deposed.   Plaintiff filed a motion in front of Magistrate Judge Cole to prevent defendants from deposing Kelvin Doyle a second time.  Essentially, plaintiff argued that the defendants should have proceeded with the deposition of Kelvin Doyle despite the fact that Mr. Doyle wanted to speak to an attorney before proceeding with the deposition.

Judge Cole disagreed with plaintiff's position and ruled that defense counsel acted appropriately in not proceeding with the deposition and that the defendants could depose Kelvin Doyle a second time. Defendants then flew out to Denver a second time to depose Kelvin Doyle, but he never showed for his deposition. Defendants would be unfairly prejudiced if Mr. Doyle is permitted to testify at trial given his two subsequent refusals to sit for his deposition. As such, he should be barred as a witness.

**33.    Bar Billy Walker and Helen Smith As Witnesses At Trial and bar any mention of the Search Warrant conducted at 157 N. Menard St, Chicago, IL, on April 20, 2005.**

On April 20, 2005, a team of thirteen (13) Chicago police officers, including defendants Edwards and Mulkerrin, executed a search warrant at 157 N. Menard St., in Chicago, Illinois. The search warrant was for a 9MM handgun, SK-5 rifle, ammunition, proof of residence and any illegal contraband. The search of the residence revealed at Ruger 9mm semi-automatic handgun; a .38 caliber semi-automatic Jennings handgun; certain ammunition and united states currency. All items were placed in envelopes and were inventoried under Chicago Police Department Inventory numbers.

When defense counsel asked plaintiff's counsel why he intended on calling Billy Walker and Helen Smith at trial, he indicated that Billy Walker and Helen Smith resided at 157 N. Menard where the above mention guns and ammunition were recovered and inventoried and that they would testify that the gun that the defendant officers in this case claim that Tommy Morris had and pointed at them was one the guns that was recovered during the search warrant on April 20, 2005 at 157 N. Menard. Apparently, it will be plaintiff's theory that defendants Edwards and/or Mulkerrin took the gun that was recovered during the April 20, 2005 search at 157 N.

Menard and planted that gun on Tommy Morris in this case when in fact Tommy Morris never had a gun.

One of the glaring problems with plaintiff's conspiracy theory is that the gun that was found on Tommy Morris the night of this shooting is a completely different gun that was found at 157 N. Menard. Specifically, the gun found on Tommy Morris was a 380 caliber Hungarian Pistol, while the guns found in the search warrant at 157 N. Menard were a Ruger 9mm semi-automatic handgun and a .38 caliber semi-automatic Jennings handgun, which are completely different guns. Therefore, plaintiff's conspiracy theory is more than a fishing expedition: It is not even based on the evidence. Moreover, both of plaintiff's witnesses Billy Walker and Helen Smith were served with a deposition subpoena, but both did not show for their deposition. Therefore, both witnesses should be barred because: (1) Neither witness would present relevant testimony, but would rather only improperly and fraudulently imply that the defendant officers planted the gun found at 157 N. Menard on Tommy Morris; (2) such testimony would be unfairly prejudicial to defendants and would be a fraud on the court; and (3) both witnesses failed to show for their depositions. Finally, plaintiff should be barred from mentioning the search warrant that was conducted at 157 N. Menard Street as being irrelevant and prejudicial evidence.

WHEREFORE, Defendants respectfully request that plaintiff and her witnesses and attorneys be ordered not to mention, refer to, adduce, interrogate concerning, voluntarily answer, introduce any physical evidence concerning or attempt to convey to the jury at any time during these proceedings in any manner, directly or indirectly, the subject matter as stated above, and

that each counsel be instructed to warn and caution each and every witness under their control

appearing in their litigation to strictly comply with the ruling of this Court.

Respectfully submitted,

  /Scott Jebson/
Scott Jebson
Jonathan Green
Andrea Cook
Assistants Corporation Counsel
Attorneys for the Defendants
ARDC Nos.    06225243
                       06193934
                       06288085

30 N. LaSalle Street
Suite 900
Chicago, IL 60602
(312) 744-6959
(312) 744-0226
(312) 742-7042
Fax: (312) 744-6566
Dated:     May 2, 2011